IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA KARAFFA | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-1184 |
| | : | |
| MONTGOMERY TOWNSHIP, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                              **March 21, 2013**

Plaintiff Patricia Karaffa brings this action against her former employer, Montgomery Township (the Township), and two former supervisors, Jo Marie Pearson and Ann Shade, alleging violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. Karaffa alleges Defendants unlawfully interfered with her rights under the FMLA (Count I), discriminated against her for taking FMLA leave (Count II), and constructively discharged her in violation of the FMLA (Count III). Karaffa has filed a motion for partial summary judgment on Defendants' liability for Counts I and II. Defendants have filed a motion for summary judgment on all Counts. For the following reasons, Defendants' motion for summary judgment will be granted.

**FACTS**[1]

In 2001, the Township hired Karaffa as a police dispatcher. In June 2010, Karaffa learned she was pregnant. That same month she informed the Township she was pregnant and would be

---

[1] "On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). "On cross-motions for summary judgment, the court construes facts and draws inferences 'in favor of the party against whom the motion under consideration is made.'" *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (quotation omitted).

requesting maternity leave. In November 2010, Karaffa submitted a letter to the Township informing it she had a planned delivery date of February 4, 2011, and requesting leave for her delivery and for recovery/maternity leave under the FMLA. Defendant Anne Shade, the Township's Director of Human Resources, informed Karaffa her FMLA leave request was approved.

Township police dispatchers work in three shifts, seven days a week: 7 a.m. to 3 p.m. (hereinafter, "morning shift"); 3 p.m. to 11 p.m. (hereinafter, "evening shift"); and 11 p.m. to 7 a.m. (hereinafter, "overnight shift"). From at least June 2010 to December 2010, Karaffa was assigned a "rotating shift," which she described as a combination of all three shifts.

In December 2010, Karaffa was diagnosed with gestational diabetes, a condition in which a woman develops high blood glucose levels during pregnancy. Karaffa requested a new schedule pursuant to the FMLA so she could properly treat her gestational diabetes. In support of her request, Karaffa's physician, Dr. Angela C. Boylan, M.D., completed and sent to the Township an FMLA request form certifying that treatment for Karaffa's gestational diabetes required that she work only the morning shift, rather than rotating shifts, so Karaffa could better maintain her glucose levels through a prescribed diet plan. Dr. Boylan also informed the Township that Karaffa's gestational diabetes was a temporary condition, which would resolve after her delivery. The Township granted Karaffa's request and assigned her only morning shifts until she began her previously scheduled FMLA leave for her delivery and recovery/maternity leave. Karaffa commenced this FMLA leave on February 1, 2011, and, as Dr. Boylan indicated, her gestational diabetes completely resolved after her delivery.

On April 11, 2011, Karaffa received a letter from the Township informing her that upon her return from maternity leave she would be scheduled to work only overnight shifts. Karaffa

2

informed the Police Chief and Deputy Chief she did not want this schedule, and that such an assignment was inconsistent with the Karaffa's seniority and the seniority system of shift assignments. The Township agreed the assignment of permanent overnight shifts was an oversight, as the scheduler mistakenly believed Karaffa desired this shift because she had worked permanent overnight shifts in the past. Before Karaffa returned to work, her schedule was changed to evening shifts with two weekends of overnight shifts per month. Karaffa returned to work shortly after April 11.

On May 17, 2011, Karaffa was injured in a car accident and could not immediately return to work. At that time, Karaffa had exhausted her FMLA leave. In a May 19 email to the Township, Karaffa requested leave to recover from her car accident injuries and asked that such leave be considered an accommodation under the Americans with Disabilities Act (ADA). She did not request FMLA leave for this time period, and she admitted she did not know if she had any available FMLA leave when she made her request for an ADA accommodation. Nevertheless, in a June 13, 2011, letter, Shade informed Karaffa she would not be receiving FMLA leave for her recovery time because her FMLA benefits were exhausted through February 4, 2012; rather, Karaffa's leave beginning May 17, 2011, would be covered under her short-term disability policy.

On August 4, 2011, Karaffa again returned to work. Upon her return, Karaffa was not tasked with dispatcher duties, but was asked by her supervisor, Defendant Jo Marie Pearson, to perform other tasks which Karaffa thought were "menial and degrad[ing]," like shredding paper and organizing documents. Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. 20, ECF No. 30.[2]

---

[2] The Township disputes that the tasks assigned to Karaffa were not included within the duties of a dispatcher. It also disputes that Pearson was Karaffa's supervisor, asserting Pearson was the

Karaffa performed these tasks in an area separate from where the dispatchers were located. The Township asserts Karaffa was taken off of the dispatcher schedule to comply with the work restrictions imposed by her physician; however, Karaffa argues these restrictions did not prevent her from performing dispatcher duties. Karaffa's physician imposed the following restrictions: part-time sedentary work only; no prolonged standing; no squatting; no heavy lifting; no sitting in a rolling chair; a maximum four hour shift; and a preferred shift of 7 a.m. to 11 a.m.

In an August 11, 2011, letter, Shade informed Karaffa that she would be required to undergo an examination by an independent physician to determine the existence of any potentially disabling conditions and to evaluate the appropriateness of the limitations imposed by her treating physician. The letter further stated Karaffa would not need to report to work until the independent physician made his evaluation, but she would still be paid for a total of eight hours of work per day, half of which would be paid through short-term disability. Karaffa did not view this letter as terminating her employment.

Approximately one month later, in early September 2011, Karaffa submitted a complaint to the Township alleging she had been harassed and retaliated against for taking FMLA leave. An attorney for the Township attempted to solicit additional information from Karaffa about her complaint, but Karaffa did not respond. Karaffa did send an email to the Township on September 14, 2011, requesting additional time to respond to a Township inquiry for additional information; however, it is unclear if this inquiry is the same as the inquiry from the Township's attorney. Shade granted Karaffa additional time to respond in a September 16, 2011, letter. Karaffa alleges she was constructively discharged on September 7, 2011, due to the ostracism and harassment she had experienced.

---

most senior dispatcher and had some supervisory duties, but was not Karaffa's or any other dispatcher's supervisor.

On March 7, 2012, Karaffa filed the instant lawsuit, asserting the following FMLA claims against the Township, Pearson, and Shade: (1) unlawful interference with FMLA rights (Count I); (2) discrimination for requesting and taking FMLA leave (Count II); and (3) constructive discharge under the FMLA (Count III).  Karaffa filed a motion for partial summary judgment, asking this Court to find she has established Defendants' liability for Counts I and II only.  Defendants filed a motion for summary judgment on all Counts.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh*, 418 F.3d at 267.  "On cross-motions for summary judgment, the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the nonmovant." *Selective Way Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 724 F. Supp. 2d 520, 525 (E.D. Pa. 2010) (citing *Pichler*, 542 F.3d at 386).  To defeat a summary judgment motion, the non-moving party "must rely on affidavits, depositions, answers to interrogatories, or admissions on file" to show there is a genuine issue of material fact. *Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (quotation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The FMLA guarantees an eligible employee 12 workweeks of leave during any 12-month period due to the birth of a child, a family member's serious health condition, the employee's own serious health condition, and other exigencies involving a family member's service in the armed forces. 29 U.S.C. § 2612(a)(1). Upon an employee's return from FMLA leave, the employer must restore the employee to the position she held when her leave commenced or an equivalent position with equivalent benefits and conditions of employment. *Id.* § 2614(a).

The FMLA also makes it unlawful "for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," FMLA rights. *Id.* § 2615(a)(1). Additionally, employers may not discriminate or retaliate against an employee based on the exercise of FMLA rights. *Id.* § 2615(a)(2); 29 C.F.R. § 825.220(c) (prohibiting employers from discriminating or retaliating against an employee for exercising or attempting to exercise FMLA rights); *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) (distinguishing between "interference" and "discrimination" claims under the FMLA). Finally, employers may not retaliate against an employee for complaining about or participating in a proceeding concerning an employer's alleged violation of the FMLA. 29 U.S.C. § 2615(b).

To assert an FMLA interference claim, Karaffa need only show she was entitled to benefits under the FMLA and that she was denied such benefits. *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006). Karaffa alleges Defendants denied her the right to return to the same or an equivalent position upon her return from maternity leave in April 2011 and again after her car accident in August 2011. As an initial matter, Karaffa cannot maintain an interference claim based on her leave of absence to recover from the injuries caused by the car accident because that leave was not protected under the FMLA, as Karaffa had exhausted her FMLA leave prior to the accident. As the Township made clear in its June 13, 2011, letter to

6

Karaffa, the leave following her car accident was covered by her short-term disability policy, not the FMLA. *See, e.g.*, *Devine v. Prudential Ins. Co. of Am.*, No. 03-3971, 2007 WL 1875530, at *28 (D.N.J. June 28, 2007) ("Once an employee has been provided with 12 workweeks of leave, the employer's obligations under the FMLA expire." (citing *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784-85 (6th Cir. 1998))); *Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 462-63 (E.D. Pa. 2005) ("[E]mployees who exhaust the twelve weeks of leave provided under the FMLA stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA, leave."); *Frederick v. Brandywine Hosp., Inc.*, No. 03-3362, 2003 WL 21961372, at *1 (E.D. Pa. July 7, 2003) (dismissing an FMLA interference claim because plaintiff's leave extended beyond the FMLA's 12-week maximum); *Panto v. Palmer Dialysis Ctr.*, No. 01-6013, 2003 WL 1818990, at *6 (E.D. Pa. Apr. 7, 2003) (granting summary judgment for employer because employee had exhausted FMLA leave and employer's more generous leave policy did not extend protections of the FMLA).[3]

As to her position following her maternity leave, Karaffa argues she was not reinstated to the same or an equivalent position upon her return to work because she had been working permanent morning shifts prior to her maternity leave, but was assigned permanent overnight shifts upon her return. Karaffa's argument has two fundamental flaws. First, she never actually worked the permanent overnight shifts as initially scheduled. Before she returned to work,

---

[3] Karaffa argues Shade admitted under oath that Karaffa was covered under the FMLA for all relevant time periods from "2010 through 2011." Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 13, 15, 17, 19, 21, 26. This is a flagrant mischaracterization of the record. During Shade's deposition, Karaffa's attorney referenced the 2010 through 2011 time period to establish the period within which he was focusing his questioning. He never asked if both of Karaffa's leaves of absence in 2011 were covered by the FMLA, and Shade certainly never stated as much. The record is devoid of any evidence whatsoever indicating Karaffa's leave from May 17 to August 4, 2011, was FMLA leave and not short-term disability leave as initially explained to Karaffa by the Township.

Karaffa's schedule was changed to the evening shift with two weekends of midnight shifts per month. Karaffa has not cited any case law suggesting an FMLA interference claim can be premised on only the employer's *intent* to reinstate the employee to a different position or shift, nor has this Court found support for such a proposition. Rather, the plain language of the statute shows the Township's duty to reinstate Karaffa to a position equivalent to the one she held prior to her FMLA leave arises only "on return from such leave." 29 U.S.C. § 2614(a)(1); *accord* 29 C.F.R. § 825.214 ("*On return from FMLA leave*, an employee is entitled to be returned to the same position the employee held when leave commenced . . . ." (emphasis added)).

Second, Karaffa was only entitled to return to a "rotating shift," not the steady morning shift schedule the Township provided her to accommodate her gestational diabetes. Although an employee generally is entitled to return to the same shift or equivalent work schedule she had prior to taking FMLA leave, 29 C.F.R. § 825.215(e)(2), by Karaffa's own account, her schedule of steady morning shifts from December 2011 until the start of her maternity leave was intermittent FMLA leave, and thus not the shift she held "when leave commenced," *id.* § 825.214; *see also* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. 13-14 (arguing her request for a scheduling accommodation for her gestational diabetes was a request for "intermittent leave" covered by the FMLA). Even if this temporary schedule of only morning shifts was not covered by the FMLA, Karaffa was not entitled to this schedule upon return from her maternity leave.[4] "An employee [returning from FMLA leave] has no greater right to reinstatement or to

---

[4] FMLA leave may be taken intermittently or on a reduced leave schedule. 29 U.S.C. § 2612(b). "Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason. A reduced leave schedule is a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per workday. A reduced leave schedule is a change in the employee's schedule for a period of time, normally from full-time to part-time." 29 C.F.R. § 825.202(a). A narrow reading of these definitions suggests Karaffa's special schedule while

other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). Assuming Karaffa's maternity leave from February to April 2011 was the only FMLA leave she took relating to her pregnancy, she was only entitled to return to the same shift she would have worked if she had not gone on maternity leave. As the record clearly shows, the steady morning shift schedule was only a temporary accommodation during the period in which Karaffa suffered from gestational diabetes, which condition completely resolved upon her delivery. Accordingly, had Karaffa not gone on maternity leave, her schedule would have reverted back to a "rotating shift" because she no longer needed a steady morning shift. Karaffa, therefore, was only entitled to be returned to a "rotating shift," and not the temporary accommodation shift.

To establish her interference claim, therefore, Karaffa must show her schedule upon her return from maternity leave was not equivalent to the "rotating shifts" she worked prior to December 2010. *See* 29 C.F.R. § 825.215(e)(2) ("The employee is ordinarily entitled to return to the same shift or the same or an equivalent work schedule."). After her maternity leave, Karaffa was assigned the evening shift with two weekends of overnight shifts per month, shifts she had also performed prior to her FMLA leave. Significantly, Karaffa does not argue this schedule was not equivalent to her rotating shifts schedule, but only argues it was less desirable than her temporary morning shift schedule. Some courts have found a change from a permanent day shift to a permanent overnight shift raises a question of fact whether the schedules were equivalent for purposes of the FMLA. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 766 (5th Cir. 2001); *Miller v. Miller Cnty.*, No. 06-4094, 2009 WL 358271, at *2-3 (W.D. Ark. Feb. 11, 2009). Here, however, Karaffa's post-FMLA leave schedule included only shifts she regularly worked

---

she suffered from gestational diabetes was not covered by the FMLA because she continued to work a full eight-hour shift per day.

prior to her leave.  There is no evidence in the record suggesting this schedule was not equivalent to the rotating shifts schedule she worked before her diagnosis of gestational diabetes, and, in fact, Karaffa does not even argue those two schedules were unequal.  Consequently, a reasonable trier of fact could not find the Township failed to reinstate Karaffa to an equivalent position and work schedule, and Defendants are therefore entitled to summary judgment on Karaffa's interference claim.

Next, Karaffa alleges Defendants discriminated against her for taking FMLA leave by "demoting" her to a less desirable schedule than she previously had upon her return from maternity leave in April 2011, and by stripping her of dispatcher duties after her return from leave to recover from her car accident in August 2011.  Courts analyze such FMLA discrimination claims (also referred to as "retaliation claims") under the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *E.g.*, *Atchison v. Sears*, 666 F. Supp. 2d 477, 490 (E.D. Pa. 2009).  Under this analysis, Karaffa must establish a prima facie case of FMLA discrimination by demonstrating: (1) she exercised her rights under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the exercise of her FMLA rights.  *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009).  Because Karaffa has failed to established a prima facie discrimination claim, it is not necessary to discuss the subsequent stages of the burden-shifting analysis.

As for her alleged demotion upon her return from maternity leave, Karaffa has established she was exercising her FMLA rights by taking maternity leave, but she has not shown she suffered an adverse employment action, i.e., that she was demoted.  As addressed in detail above, after her maternity leave, Karaffa was returned to a position and work schedule

equivalent to the one she enjoyed prior to her leave. Her argument she was entitled to the special schedule she was given to accommodate her gestational diabetes is rejected for the reasons already discussed.

As for the circumstances involving her return to work after her car accident, Karaffa alleges Defendants stripped her of all dispatcher duties, forced her to perform humiliating tasks, and caused her to suffer other adverse employment actions in response to her taking leave to recover from the injuries she suffered in the accident. This leave, however, was not protected by the FMLA because Karaffa had already exhausted her 12 weeks of FMLA leave. As Karaffa's request for, and taking of, leave after her accident does not constitute an exercise of her FMLA rights, any alleged discrimination for seeking or taking such leave does not violate the FMLA. *See Schnoor v. Publ'ns Int'l, Ltd.*, No. 03C4972, 2005 WL 1651045, at *7 (N.D. Ill. July 7, 2005) (holding plaintiff who had exhausted her FMLA leave before requesting additional FMLA leave could not make out a prima facie case of discrimination based on her termination after her request because such activity was not protected under the FMLA); *Panto*, 2003 WL 1818990, at *7 (declining to consider leave taken after the employee had exhausted her FMLA leave as protected activity for the purpose of an FMLA discrimination claim); *see also Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (rejecting an FMLA discrimination claim by a plaintiff who was not eligible for FMLA leave at the time she requested leave, holding "the statute does not protect an attempt to exercise a right that is not provided by [the] FMLA").

Karaffa attempts to overcome this defect by arguing she had a good faith belief she was exercising her FMLA rights by requesting and taking leave after her accident. The record, however, undermines her argument. In her written correspondence to the Township after her

11

accident, Karaffa expressly asked for leave under the ADA.  Moreover, Karaffa was certainly aware at that time that the FMLA guarantees leave to deal with personal health issues in some circumstances because she had expressly referenced the FMLA in requesting her previous maternity leave and other leaves of absence.  Also, during her deposition, Karaffa admitted she did not know whether she had any FMLA leave remaining when she requested time off after her accident.  In fact, there is no evidence of record suggesting Karaffa believed she was requesting or taking FMLA leave.  A reasonable trier of fact, therefore, could not find Karaffa had a good faith belief she was exercising her FMLA rights.  Furthermore, this Court is skeptical that Karaffa's mistaken but good faith belief she had available FMLA leave could save this kind of discrimination claim in any event.  *See Walker*, 379 F.3d at 1253 (holding the FMLA does not "protect someone who mistakenly asks for FMLA leave although they are ineligible").

Karaffa also appears to argue the adverse employment actions she experienced upon her return from work after her non-FMLA leave in August 2011 were in response to her taking FMLA leave from February to mid-April 2011 for the birth of her child.  No reasonable trier of fact, however, could find a causal relationship between Karaffa's FMLA leave and the alleged adverse acts based on this record.  Karaffa's only argument is that the temporal proximity suggests a causal relationship; however, over three and a half months had passed between the end of her FMLA maternity leave and the alleged adverse actions.  Although temporal proximity between the protected activity and the adverse act alone can be sufficient to establish a causal link, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred."  *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (quotation omitted); *accord Walker v. Independence Blue Cross*, No. 03-6396, 2005 WL 1266590, *7 (E.D. Pa. May 27, 2005) (applying "unusually suggestive"

timing standard to an FMLA discrimination/retaliation claim); *Dogmanits*, 413 F. Supp. 2d at 464 (same).  Absent any other evidence suggesting a causal relationship between Karaffa's maternity leave and the circumstances surrounding her return after her accident, the three and a half months between the two events cannot support a finding of a causal relationship.  *Compare Williams*, 380 F.3d at 760 (affirming summary judgment on a retaliation claim against employee whose only evidence of causation was temporal proximity of just over two months), *and Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding a temporal proximity of roughly three weeks was not enough on its own to raise a material issue of fact as to the causal connection in an employment retaliation claim), *with Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (holding the causation element of a prima facie retaliation claim was established by showing a temporal proximity of two days).  Accordingly, Karaffa has not established a prima facie claim of discrimination/retaliation under 29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(c), and Defendants are entitled to summary judgment on this claim.

At oral argument, Karaffa for the first time asserted a claim under 29 U.S.C. § 2615(b) of the FMLA, alleging the Township took the adverse actions following her short-term disability leave in retaliation for complaining about the Township's FMLA violations.  Retaliation claims under § 2615(b) are analyzed under the same burden shifting framework as FMLA discrimination claims and retaliation claims under other employment discrimination statutes. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *Lehmann v. Aramark Healthcare Support Servs., LLC*, 630 F. Supp. 2d 388, 391 (D. Del. 2009).  This claim clearly fails because Karaffa has not presented any facts suggesting a causal relationship between her complaint and the alleged retaliatory conduct.  The record shows Karaffa did not lodge a complaint with the Township regarding its purported FMLA violations until sometime in early

13

September, over one month *after* the alleged retaliatory conduct and roughly one month after she worked her last day for the Township.  Consequently, Karaffa obviously cannot establish Defendants retaliated against her for lodging her complaint when she made her complaint *after* the alleged retaliatory acts.  This claim also fails.

Finally, Karaffa alleges the humiliating, non-dispatcher tasks she was forced to perform in a room segregated from the rest of the work force upon her return to work in August 2011 constituted a constructive discharge. This claim fails for the same reasons as her other discrimination and retaliation claims.  A claim of constructive discharge under the FMLA is no more than a discrimination/retaliation claim wherein the adverse employment action is that the employee was constructively discharged.  *See Sherrod v. Phila. Gas Works*, 209 F. Supp. 2d 443, 451 (E.D. Pa. 2002).  Even if Karaffa could show she was constructively discharged due to the working conditions upon her return, as this Court has already found, no reasonable trier of fact could find such conditions had any causal connection to her protected FMLA activities.

Moreover, Karaffa has not come close to showing she was constructively discharged.  To establish a constructive discharge, Karaffa must show Defendants "knowingly permitted conditions of [FMLA] discrimination in employment so intolerable that a reasonable person subject to them would resign."  *Tanganelli v. Talbots, Inc.*, 169 F. App'x 124, 127 (3d Cir. 2006) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)).  "Intolerability . . . is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign—that is, whether [she] would have had no choice but to resign."  *Id.* (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)).  Simply put, no reasonable trier of fact could find the alleged adverse employment acts suffered by Karaffa rise to the level of so intolerable as to compel her resignation.  She only performed the

allegedly non-dispatcher tasks for one week, after which she was given paid leave until an independent physician cleared her for work. She never returned. Defendants are therefore entitled to summary judgment on Karaffa's constructive discharge claim as well.

    An appropriate Order follows.

                                    BY THE COURT:


                                  /s/ Juan R. Sánchez
                                 Juan R. Sánchez, J.